UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
UNITED STATES OF AMERICA,                         :
                                                  :     **MEMORANDUM AND ORDER**
          -against-                               :     13-CR-316 (DLI)
                                                  :
ZACHARY BLACK,                                    :
                                                  :
                              Defendant.          :
------------------------------------------------------------ x

**DORA L. IRIZARRY, United States District Judge:**

This opinion is written for the benefit of the parties and familiarity with the underlying facts and issues is presumed. Briefly, defendant Zachary Black is charged with conspiracy to distribute and possess with intent to distribute marijuana between June 1, 2011 and July 2, 2013, conspiracy to commit money laundering between June 1, 2013 and July 2, 2013, conspiracy to distribute and possess with intent to distribute methylone between April 19, 2013 and April 29, 2013, and attempted possession of methylone with intent to distribute it on or about April 29, 2013.

The government now moves to: (1) preclude the defendant from introducing self-serving exculpatory statements to law enforcement officers; (2) introduce evidence of the defendant's prior attempt to purchase methylone as either direct evidence of the methylone trafficking charges or, in the alternative, under Rule 404(b) as proof of the defendant's knowledge and intent; and (3) introduce evidence of the defendant's failure to report significant sums of money in his tax filings as either direct evidence of the money laundering conspiracy or, in the alternative, under Rule 404(b). For the reasons set forth below, the government's motion is granted in its entirety.

# DISCUSSION

I. **Preclusion of Defendant's Self-serving, Exculpatory, Out-of-court Statements**

The government seeks to preclude the defendant from introducing, through cross-examination or otherwise, his "self-serving exculpatory statements to law enforcement officers," during a traffic stop in Oregon. (*See* Motion in Limine by USA ("Govt. Mot."), Docket Entry 129, at 1.) The government argues it may introduce the defendant's inculpatory statements to these law enforcement officers because they are not hearsay when introduced by the government. (*Id.* at 5-6.) The government contends that defendant's self-serving, exculpatory statements are hearsay when offered by the defendant and, since there is no hearsay exception under which the defendant can introduce them at trial, he should be precluded from introducing these statements through cross-examination or as substantive evidence. (*Id.* at 5-6.) In addition, the government contends the rule of completeness is inapplicable here because the inadmissible, exculpatory statements are not necessary to explain the admissible, inculpatory statements. (*Id.* at 6.)

In opposition, defendant simply contends that preclusion of the exculpatory statements violates his due process and Confrontation Clause rights. (*See* Defendant's Reply to Government's Motion in Limine ("Def. Opp."), Docket Entry No. 132, at 2.)

Hearsay is an out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). A party's own statement, if offered against him, is not hearsay. Fed. R. Evid. 801(d)(2)(A). Thus, "[s]tatements made by the defendant may be introduced by the government in a criminal trial to prove the truth of the facts stated in them because they are admissions of an adverse party." *United States v. Russo*, 302 F.3d 37, 43 (2d. Cir. 2002). However, "[w]hen the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." *United*

*States v. Marin*, 669 F.2d 73, 84 (2d. Cir. 1982); *see also United States v. Vrancea*, 2013 WL 549099, at *4 (E.D.N.Y. Jan. 4, 2013) ("Under this rubric, self-serving and exculpatory statements are inadmissible hearsay and may not be introduced by the defendant at trial.").

The "rule of completeness," which is reflected in Federal Rule of Evidence 106, "permits a defendant to introduce the remainder of a statement not otherwise admissible if it is 'necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion.'" *United States v. Gonzalez*, 399 Fed. Appx. 641, 645 (2d Cir. 2010) (citing *United States v. Castro*, 813 F.2d 571, 576 (2d Cir. 1987)). This is true, "even though a statement may be hearsay." *United States v. Coplan*, 703 F.3d 46, 85 (2d Cir. 2012); *United States v. Kopp*, 562 F.3d 141, 144 (2d Cir. 2009). The rule of completeness "does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *Kopp*, 562 F.3d at 144.

In the instant case, the purportedly exculpatory statements the defendant made to law enforcement agents in the course of his arrest in Oregon would be hearsay if introduced by the defendant, and no exception exists for the defendant to admit such statements. With regard to the rule of completeness, the portions of the defendant's statements that the government expects to admit do not trigger any of these concerns.[1] The government intends to introduce, *inter alia*, the defendant's alleged statement to law enforcement agents that half of the money seized during his arrest was from marijuana production. (Govt. Mot. at 4.) Whether the defendant obtained some of the money from Las Vegas casinos, friends, and financial accounts, as he told the law enforcement officers, does not further explain or clarify his admission that half the money came

---

[1] Notably, the defendant did not seek to introduce the defendant's self-serving, exculpatory statements under the rule of completeness, but only on the grounds that preclusion would violate his constitutional right to due process and to confront his accuser.

from marijuana transactions. (*Id.* at 4.) The rule of completeness does not "require introduction of portions of a statement that are neither explanatory of nor relevant to the admitted passages." *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982). Consequently, the defendant's self-serving, exculpatory statements are inadmissible hearsay, and he cannot use this rule of completeness as "a mechanism to bypass hearsay rules for any self-serving testimony." *Gonzalez*, 399 Fed. Appx. at 645.

Lastly, the defendant contends that preclusion of his self-serving statements would violate the Confrontation Clause. (*See* Def. Opp. at 2-3.) The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. "It is a clearly established principle of Supreme Court jurisprudence that the Confrontation Clause requires that a criminal defendant be afforded a meaningful opportunity to cross-examine witnesses against him." *Watson v. Greene*, 640 F.3d 501 (2d Cir. 2011) (citation omitted) "[T]he right to confront and to cross-examine," however, "is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process." *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973); *accord Watson*, 640 F.3d at 510. Thus, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986).

From this Court's review of Second Circuit case law, it does not appear that the Second Circuit has considered whether limiting a defendant's elicitation of his own exculpatory, out-of-court statements implicates the defendant's rights under the Confrontation Clause. In the

absence of guidance from the Second Circuit, this Court looked to sister circuits that have considered this question. It appears that every court to address this issue has held that a court may preclude a defendant's elicitation of his own otherwise inadmissible statements without violating the Sixth Amendment. *See e.g.*, *United States v. Ford*, 761 F.3d 641, 652 (6th Cir. 2014) ("Precluding a defendant from eliciting inadmissible hearsay statements [including his own statements] does not violate the Confrontation Clause.") (citation omitted); *United States v. Larsen*, 175 Fed. Appx. 236, 241-42 (10th Cir. 2006) ("In this case, we decline to permit [the defendant] to use the Confrontation Clause as a means to effectuate an end run around the adversarial process by admitting his otherwise inadmissible hearsay testimony without subjecting himself to cross-examination.") (internal quotation marks and citations omitted); *United States v. Ortega*, 203 F.3d 675, 682-83 (9th Cir. 2000) (holding that defendant "should not be allowed to use the Confrontation Clause as a means of admitting hearsay testimony through the 'back door' without subjecting himself to cross-examination.") (citation omitted).

Similarly, this Court finds that the defendant may not rely on the Confrontation Clause as a basis to introduce his otherwise inadmissible statements. His bald conclusory claims of deprivation of due process are similarly unavailing. Accordingly, the defendant is precluded from introducing the self-serving, exculpatory statements he made to law enforcement officers, whether through cross-examination or as direct evidence.

## II. Admissibility of Defendant's Uncharged Bad Acts

### a. Admissibility of Defendant's Attempted Methylone Purchase

The government also moves to introduce evidence of defendant's prior attempt to purchase methylone by way of a cell phone text message to codefendant/coconspirator Breton, as either direct evidence of the methylone trafficking charges or, in the alternative, under Rule

404(b) as proof of his intent, knowledge, and guilty association with Breton. The government's motion is granted, as the evidence of the defendant's prior attempt to purchase methylone is direct evidence of the methylone trafficking charges.

"[E]vidence of uncharged criminal activity is not considered other crimes evidence under [Rule] 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (internal quotations and citation omitted). Accordingly, "[where] the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself." *United States v. Diaz*, 176 F.3d 52, 79 (2d Cir. 1999) (internal quotation marks and citations omitted); *see also United States v. Concepcion*, 983 F.2d 369, 392 (2d Cir. 1992) ("An act that is alleged to have been done in furtherance of the alleged conspiracy . . . is not an 'other' act within the meaning of Rule 404(b); rather, it is part of the very act charged."). Nonetheless, such evidence may be inadmissible pursuant to Federal Rule of Evidence 403 ("Rule 403"), even if relevant, if "its probative value is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403.

Here, the evidence in question is a purported communication about the purchase of methylone between the defendant and Raddy Breton, who was a member of the charged methylone and marijuana conspiracies. The government submits that this evidence is admissible as direct evidence of the methylone trafficking conspiracy, and the Court agrees. *See United States v. Thai*, 29 F.3d 785, 812 (2d Cir. 1994) ("When the indictment contains a conspiracy charge, uncharged acts may be admissible as direct evidence of the conspiracy itself."); *accord United States v. LaSpina,* 299 F.3d 165, 182 (2d Cir. 2002) ("It is clear the Government may

offer proof of acts not included within the indictment, as long as they are within the scope of the conspiracy.") (citing *United States v. Bagaric*, 706 F.2d 42, 64 (2d Cir. 1983)). Not only does the evidence prove defendant's knowledge of, and intent to join the drug conspiracy, but it also tends to show his association with Breton and development of trust between them.

Rule 403 does not preclude the introduction of this evidence. The danger of unfair prejudice does not outweigh the probative value of the proffered evidence, because it does not involve conduct more inflammatory than the charged crimes. *See United States v. Livoti*, 196 F.3d 322, 326 (2d Cir. 1999). Here, the evidence of a single attempted purchase of methylone is not more offensive or egregious than the methylone trafficking conspiracy charged in the indictment. Since the evidence is admissible as direct evidence of the conspiracy, the Court need not address the government's alternative theory that the evidence is admissible under Rule 404(b), other than to state that, for the reasons set forth in the government's memorandum, this evidence would also be admissible under Rule 404(b)(2) to prove knowledge and intent, preparation, and plan and, as explained above, its probative value is not substantially outweighed by the risk of unfair prejudice to the defendant.

Accordingly, the government's motion to introduce evidence of the defendant's attempted methylone purchase is granted.[2]

---

[2] The defendant's opposition to the admissibility of this evidence focuses primarily on the authenticity of the communication, claiming that counsel "affirms" that he had not seen the text in discovery. (*See* Def. Opp. at 3-4.) The government responded to defense counsel's concerns by disclosing that the government: (1) produced the January 2013 text message in discovery approximately one year ago on November 25, 2013; (2) provided the defendant's current counsel this discovery on January 28, 2014; and (3) intends to prove at trial that the defendant used the phone assigned the same number to send the communication to book a ticket on Southwest Airlines on January 22, 2013. (*See* Reply Mem. Of Law in Support of Govt.'s Motion in Limine, Docket Entry 140, at 4-5.) In light of the government's reply, the Court finds the defendant's contentions unpersuasive.

### b. Admissibility of Defendant's Tax Returns

The government also moves to introduce evidence of the defendant's failure to report significant sums of money in his tax filings, as either direct evidence of the money laundering conspiracy or, in the alternative, under Rule 404(b) as proof of knowledge of the money laundering conspiracy and fraudulent intent. The government's motion is granted.

As discussed above, "evidence of uncharged criminal activity is not considered other crimes evidence under [Rule] 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44 (internal quotations and citation omitted).

Several courts have held that evidence of a defendant's failure to report significant sums of money in tax filings is relevant to, and evidence of, the defendant's participation in a money laundering conspiracy. *See United States v. Logan*, 542 Fed. Appx. 484, 495 (6th Cir. 2013) (affirming introduction at trial of evidence of defendant's failure to fix tax returns as probative of money laundering conspiracy charge and holding that such evidence not governed by Rule 404(b)); *United States v. Mitchell*, 613 F.3d 862, 866 (8th Cir. 2010) ("Failure to file tax returns is relevant to the existence of, and a defendant's participation in, a money laundering conspiracy.") *United States v. Romero-Lopez*, 695 F.3d 17, 24 n.4 (1st Cir. 2012) ("As a general rule, failure to report income on tax returns is relevant evidence in a money laundering conspiracy case.").

Though this Court does not have the benefit of similar guidance from the Second Circuit, this Court agrees with the other circuits that have addressed this issue and finds that failure to report significant sums of money in tax filings is not "other crimes" evidence under Rule 404(b).

Instead, this failure to report is direct evidence of said offense, as it is inextricably intertwined with the defendant's participation in the money laundering conspiracy. *See United States v. Hogan*, 886 F.2d 1497, 1507 (7th Cir. 1989) (finding that "evidence that [defendant] did not report the money he received from attorneys suggests that he knew that the payments were unlawful"); *United States v. Hatfield*, 685 F. Supp. 2d 320, 324 (E.D.N.Y. 2010) (finding that evidence that the defendants failed to include certain payments and property on their tax returns was inextricably intertwined with non-tax charges, because it showed consciousness of guilt.").

The Court is cognizant that "focusing on whether or not the evidence in question qualifies as 'other act' evidence, to a certain extent, exalts form over substance." *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004). "Indeed, the only practical result of admitting evidence as intrinsic to the charged crime rather than under Rule 404(b) is that the Government escapes 404(b)'s notice requirement and the Court need not give a limiting instruction cautioning the jury against making an improper inference of criminal propensity." *See id.*; *see also United States v. Bowie*, 232 F.3d 923 (D.C. Cir. 2000). Because the Second Circuit has not yet considered this question, the Court will conduct an analysis under 404(b), as an alternative basis for admissibility. *See* 1 Stephen A. Saltzburg, Michael M. Martin & Daniel J. Capra, Federal Rules of Evidence Manual § 404.02 [11] (8th ed. 2002) ("We note that there is no significant cost to requiring a Rule 404(b) analysis; all the prosecution must do is establish a not-for-character purpose for the bad acts evidence, and. give pretrial notice . . . ."). Even under such an analysis, the government prevails.

Under Rule 404(b), evidence of other acts "may be admissible" to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Courts in this Circuit follow an "inclusionary rule" that

9

"allows the admission of such evidence for any purpose other than to show a defendant's criminal propensity, as long as the evidence is relevant and satisfies the probative-prejudice balancing test of [Rule 403]." *United States v. Greer*, 631 F.3d 608, 614 (2d Cir. 2011) (internal quotation marks omitted).

Here, such evidence of the defendant's failure to report significant sums of money in his tax filings is admissible under Rule 404(b) as evidence of the defendant's knowledge that the money was the proceeds of illegal activity. *See United States v. Thompson*, 439 Fed. Appx. 66, 68 (2d Cir. 2011) (finding that tax return was admissible under Rule 404(b) for the proper purpose of showing the defendant's fraudulent intent and absence of mistake in receiving payments). This evidence is relevant to the charged crime, because the failure to report significant income makes the occurrence of money laundering more likely. *See e.g.*, *Mitchell*, 613 F.3d at 866 ("Failure to file tax returns is relevant to the existence of, and a defendant's participation in, a money laundering conspiracy. The tax information was thus relevant to the government's assertion that Mitchell was engaged in a conspiracy to launder money.").

Finally, as discussed above, where the evidence at issue does not "involve conduct more inflammatory than the charged crime[s]," the court should not exclude it on grounds of unfair prejudice. *United States v. Paulino*, 445 F.3d 211, 223 (2d Cir. 2006) (quoting *Livoti*, 196 F.3d at 326); *see* Fed. R. Evid. 403; *see also United States v. Latysheva*, 162 Fed. Appx. 720, 725 (9th Cir. 2006) (finding evidence that defendants failed to pay taxes more probative than prejudicial "because they provided circumstantial support for the knowledge element of the money laundering offense"). Here, the probative value of the tax evidence substantially outweighs its potential for unfair prejudice. Fed. R. Evid. 403.

**CONCLUSION**

For the reasons set forth above, the government's motion *in limine* to: (1) preclude the defendant from eliciting his self-serving exculpatory statements to law enforcement officers; (2) introduce evidence of the defendant's prior attempt to purchase methylone; and (3) introduce evidence of the defendant's failure to report significant sums of money in his tax filings is granted in its entirety. The Court will provide any appropriate limiting instructions to the jury upon the presentation of such evidence and in its final jury charge.

SO ORDERED.

Dated: Brooklyn, New York
      November 5, 2014

                                              /s/
                                    DORA L. IRIZARRY
                                United States District Judge